IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

A.M. CASTLE & CO.,           §
                             §
          Plaintiff,         §
                             §
VS.                          §      Civ. A. H-13-2960
                             §
THOMAS K. BYRNE AND OILFIELD §
STEEL SUPPLY, LLC,           §
                             §
          Defendants.        §

## OPINION AND ORDER

Pending before the Court in the above referenced cause, alleging breach of employee confidentiality agreement, breach of fiduciary duty, unjust enrichment, tortious interference with contract, tortious interference with prospective economic advantage, and civil conspiracy, and seeking compensatory and injunctive relief against a former employee of Plaintiff A.M. Castle & Co. ("Castle"), Thomas K. Byrne ("Byrne"), and his new employer, Oilfield Steel Supply, LLC ("OSS")(collectively "Defendants"), is Defendants' motion for summary judgment (#60).

Defendants argue that because each of Castle's claims is based on the assertion that information provided to and in possession of Byrne was confidential information which he stole from Castle,[1] Defendants are entitled to summary judgment on all

---

[1] Without addressing whether Castle has even pleaded facts that would support the elements of its various causes of action, Defendants point out the complaint alleges that Byrne breached a fiduciary duty to Castle by retaining this confidential information after resigning from Castle and going to work for OSS, by providing that confidential information to OSS, its competitor, and by unfairly using it to solicit Castle's customers and vendors and encouraging them to bring their business to OSS.  #1, ¶¶ 34-36.  The tortious interference with contract claim rests on Byrne's entering into the Confidentiality Agreement while working

claims because Castle has not and cannot establish that it provided any confidential information to Byrne.

**Standard of Review**

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which the nonmovant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

---

for Tube Supply, Inc., predecessor to Castle, to preserve the confidentiality of his employer's customer and vendor information, sales records, personnel records, and financial information and on OSS's allegedly intentional and improper interference with Castle's business relationship with Byrne and with Castle's customers and vendors. *Id.* at ¶¶ 47-48, 56. The conspiracy cause of action (a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means) is based on Defendants' employment of unlawful means, including Byrne's breach of his common law and contractual duties to Castle to assist OSS to unfairly compete with Castle for customers and vendors. *Id.* at ¶¶ 61-62. The unjust enrichment claim, too, is based on Defendants' purported same wrongful conduct.

immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48

(1986).  "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'"  *Id., quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S.  at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence.")*; Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991).  The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial."  *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to

the nonvovant.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475
U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City
Pub. Serv. Board*, 40 F.3d at 712-13.

### Background

        Castle and OSS are direct competitors in supplying pipe
and materials to the oil and gas industry.  Byrne was initially
employed as an Inside Sales Representative in Houston, Texas by
Tube Supply, Inc., which was subsequently acquired by Castle, a
Maryland corporation with its principal place of business in
Illinois. In April 2009, when Tube Supply was still his employer,
Byrne signed a Confidentiality Agreement, to which Castle was not
a party[2] and which constitutes the basis for this lawsuit,
promising not to use his employer's confidential information for
the benefit of any third parties.  The Confidentiality Agreement
contained the following nondisclosure section prohibiting
disclosure of any of Tube Supply, Inc.'s "Proprietary
Information"[3]:

        Trade secrets, confidential knowledge, data,
        or any other information of the Company.  By

---

        [2] Castle argues that since it acquired Tube Supply,
Inc., it is entitled as Tube Supply. Inc.'s successor to enforce
the Confidentiality Agreement, citing *Duke Energy Field Services
Assets, LLC v. National Union Fire Ins. Co. of Pittsburgh, PA*, 68
S.W. 3d 848, 851 (Tex. App.--Texarkana 2002, pet. denied)("When
one business entity is acquired in its entirety by another, in the
absence of specific terms to the contrary, both liabilities and
assets of the acquired company are transferred to the purchaser"
and the "successor corporation is typically invested with the
rights and assumes the burdens of the predecessor corporation.").
Defendants do not dispute that Byrne was bound by the Agreement
after Castle acquired Tube Supply.

        [3] #60, Ex. A, ¶ 1.

way of illustration but not limitation, "Proprietary Information" includes:

(a) specifications, drawings, inventions, mask works, trade secrets, ideas, processes, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, deliveries, developments, designs and techniques (hereinafter, collectively referred to as "Inventions"); and

(b) information regarding plans for research, development, new products, regulatory matters, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers; and information regarding the skills and compensation of other employees of the Company.

By virtue of his later employment in Castle's Oil & Gas business unit, Castle claims that Byrne had access to his employer's confidential information. Castle asserts that Byrne was subject to the Confidentiality Agreement all during his employment with Castle and was thereby prohibited from retaining Castle's confidential information and from using it for the benefit of any third party, including his subsequent employer, OSS.

Byrne resigned from Castle on April 30, 2013 and went to work for OSS. Castle claims that over a course of months before Byrne resigned, Byrne misappropriated confidential information, including customer lists and information, vendor contact information, and sales and revenue data, and subsequently provided them to his new employer, OSS. Furthermore, according to Castle Byrne began soliciting Castle's customers and vendors on behalf of OSS based on this wrongfully obtained information.

## Substantive Law

To establish a cause of action for misappropriation of trade secrets[4] under Texas common law, Castle must show that (1) a trade secret existed, (2) that Defendants acquired the trade secret through improper means,[5] and (3) that they disclosed the trade secret without Castle's consent or authorization. *Wellogix, Inc. v. Accenture, LLP*, 716 F.3d 867, 874 (5th Cir. 2013); Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code section 134A.002.[6]

---

[4] As observed by the Honorable Lee Rosenthal in *Alliantgroup, LP v. Feingold*, 803 F. Supp. 2d 610, 624-25 (S.D. Tex. 2011), "Courts in Texas identify trade secrets, proprietary information, and confidential information separately but provide them similar protection if the requirements--including that of secrecy--are met." *Id., citing, e.g., Norwood v. Norwood*, No. 2-07-244-CV, 2008 WL 4926008, at *8 (Tex. App.--Fort Worth 2008, no pet.)("But a former employee may not use confidential or proprietary information or trade secrets the employee learned in the course of employment for the employee's own advantage and to the detriment of the employer."); *Bluebonnet Petroleum, Inc. v. Kolkhorst Petroleum Co.*, No. 14-07-00380-CV, 2008 WL 4527709, at *5 (Tex. App.--Houston [14th Dist.] 2008, pet. denied)("The issue, therefore, is whether the mere identify of the potential accounts with which Robinson was working, when he left Bluebonnet is a trade secret, or even merely proprietary information accorded similar protection."); Tex. Jur. *Trademark* § 54 ("There is no cause of action for misappropriation of confidential information that is not either secret or at least substantially secret."); *Parker Barber & Beauty Supply, Inc. v. The Wella Corp.*, 03-04-00623-CV, 2006 WL 291857, at *14 n.14 (Tex. App.--Austin 2006, no pet.)("The parties alternatively used each of these terms [trade secret and confidential and proprietary information] as various times.  For ease, we will refer to such information simply as 'trade secrets.'").

[5] Including through a breach of a confidential relationship. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 149-50 (5th Cir. 2004).

[6] TUTSA specifically states that "Except as provided by Subsection (b), this chapter displaces conflicting tort . . . law

-7-

The existence of a trade secret is a question of fact to be decided by the judge or the jury as factfinder.  *General Univ. Systems, Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004), *citing* Restatement (Third) Unfair Competition § 39 cmt. (1995); *Zoecon Indus. v. Am. Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983)(whether 'customer information is generally known or readily ascertainable is question of fact").

A trade secret may consist of

> any formula, pattern device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.  It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers.

*Restatement (First) of Torts* § 757, Comment b (1939), *cited with approval*, *Hyde Corp. v. Huffines*, 158 Tex. 566, 314 S.W. 2d 763, 776 (1958); *In accord, In re Bass*, 113 S.W. 3d 735, 739 (Tex. 2003).

Texas law requires that a trade secret be "secret", i.e., that it be neither generally known by others in the same

---

of this state providing civil remedies for misappropriation of a trade secret."  Tex. Civ. Prac. & Rem. Code section 134A.007. Subsection (b)(1) states that "[t]his chapter does not affect . . . contractual remedies, whether or not based upon misappropriation of a trade secret."  Therefore Castle's breach of confidentiality agreement claim might be able to continue even if its misappropriation of trade secret were dismissed.  "[B]reach of a contractual confidentiality obligation . . . has different elements from and involves a different analysis than misappropriation of trade secrets." *Tendeka, Inc. v. Glover*, No. Civ. A. H-13-1764, 2015 WL 2212601, at * (S.D. Tex. May 11, 2015), *citing Mabrey v. SandStream, Inc.*, 124 S.W. 3d 302, 315 (Tex. App.-Fort Worth 2003, no pet.).

business nor readily ascertainable by an independent investigation. *Zoecon Indus. v. Am. Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983). *See also Carson Products Co. v. Califano*, 594 F.2d 453, 461 (5th Cir. 1979)("However strong [the plaintiff's] case may be on other indicia of trade secret status," "a substantial element of secrecy must exist, so that, except by the use of improper means, there would be difficulty in acquiring the information."), *citing Restatement of Torts* § 757 Comment (b) at 6. Regarding the improper means requirement, ""obtaining information by observation, experimentation, or general inquiry is lawful, but information is unlawfully obtained if it is gained through a breach of confidence. . . . The question is not, 'How could he have secured the knowledge?' but 'How did he?'" *Tendeka, Inc. v. Glover*, NO. cIV. a. h-13-1764, 2015 WL 2212601, at *13 (S.D. Tex. May 11, 2015)(citations omitted). The *Restatement of Torts* § f defines "improper means" as "[m]eans which fall below the general accepted standards of commercial morality and reasonable conduct." Because of the secrecy requirement, the owner of a trade secret must take reasonable measures to prevent it from becoming known to persons other than those permitted by the owner to have access for limited purposes. *J.C. Kinley Co. v. Haynie Wire Line Service, Inc.*, 705 S.W. 2d 193, 198 (Tex. App.-- Houston [1st Dist.] 1985, writ ref'd n.r.e.).

The Official Comment to the *Restatement (Third) of Torts* section 757, Comment (b) at 5, provides criteria for determining whether something is a trade secret:

> An exact definition of a trade secret is not possible.  Some factors to be considered in determining whether given information is one's trade secret are:  (1) The extent to which the information is known outside his business; (2) The extent to which it is known by employees and others involved in his business; (3) The extent of measures taken by him to guard the secrecy of the information; (4) The value of the information to him or his competitors; (5) The amount of effort or money expended by him in developing the information; (6) The ease or difficulty with which the information could be properly acquired or duplicated by others.

*Adopted, In re Bass*, 113 S.W. 3d at 739.  *See also Triple Tee Golf, Inc. v. Nike, Inc.* 485 F.3d 253, 267 (5th Cir. 2007).  The owner of the trade secret does not have to satisfy all six factors because trade secrets do not fit neatly into all factors every time.  *General Univ. Sys.*, 379 F.3d at 150, *citing In re Bass*, 113 S.W. 3d 735, 739-40 (Tex. 2003).

Items such as customer lists, pricing information, client information, customer preferences, and buyer contacts may be trade secrets if they meet the criteria for such.  *Global Water Group, Inc. v. Atchley*, 244 S.W. 3d 924, 928 (Tex. App.--Dallas 2008, pet. denied), *citing T-N-Y Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W. 2d 18, 22 (Tex. App.--Houston [1st Dist.] 1998, no pet.).  *See, e.g., Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003)(holding that a customer list may be protectable as a trade secret if it is secret and the court examines  and determines if it is protectable based on three factors:  "(1) what steps, if any, an employer has taken to maintain the confidentiality of a customer list; (2) whether a departing employee acknowledges that the customer list is

confidential; and (3) whether the content of the list is readily ascertainable."). If the names and addresses of customers and vendors on a party's customer list are readily ascertainable, however, it is not protectable as a trade secret. *Gaal v. BASF Wyandotte Corp.*, 533 S.W. 2d 152, 155 (Tex. Civ. App.--Houston [14th Dist.] 1976, no writ); *Numed, Inc. v. McNutt*, 724 S.W. 2d 432, 435 (Tex. App.--Fort Worth 1987)(finding information was not a trade secret because the owner previously disclosed it in contracts with its customers). Furthermore, "[a] cause of action for misappropriation of trade secrets accrues when the trade secret is actual use." *Merritt Hawkins & Assocs. LLC v. Gresham*, ___ F. Supp. 3d ___, 2015 WL 179035, at *11 (N.D. Tex. Jan. 13, 2015), *quoting Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W. 2d 453, 455 (Tex. 1996). "''Use' of a trade secret means commercial use by which a person seeks to profit from the use of the secret.'" *Id., quoting Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450 (5th Cir. 2007), *quoting Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W. 3d 452, 464 (Tex. App.-Austin 2004, pet. denied). "As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'" *Wellogix*, 716 F.3d at 877. "Use" would include "soliciting customers through the use of information that is a trade secret." *Id.*

### Defendants' Motion for Summary Judgment (#60)

Defendants contend that although Castle claims that Byrne had access to its confidential information during his

employment, Castle fails to identify the specific information that
is allegedly confidential.  Instead, maintain Defendants, in his
complaint Castle uses vague, generic terms that cannot demonstrate
that any information he received or retained while employed by
Castle is confidential information, and Castle has not and cannot
produce sufficient evidence to establish that the information is
actually confidential.  They point out that the Confidential
Agreement also fails to specify with particularity what
constitutes confidential information, but is based on broad
generalities.  In response to an Interrogatory asking Castle to
identify its confidential information, Castle responded with the
vague definition in the Confidential Agreement and claimed nearly
all of the more than 10,000 documents[7] produced by Byrne, OSS, and
other OSS employees that were formerly associated with Castle.
#60, Ex. B, Castle's Response to Defendants' Second Set of
Interrogatories.  Defendants complain that Castle's claim that
nearly every document or email that any employee or contractor

---

[7] Defendants note that approximately 9,700 pages of
these documents were produced by Humberto Leniek ("Leniek"), who
was an independent contractor primarily addressing developing
business in South America and working as a consultant not only for
Castle, but for other companies in the oil and gas industry.
Defendants explain that Leniek was permitted to use an email
address (@tubesupply.com) that allowed him to receive and send
emails on behalf of Tube Supply, Inc. and later Castle when he was
working on non-Castle computers, and Castle did not change or
delete that configuration after Leniek's consulting arrangement
terminated.  Castle never asked Leniek to sign a confidentiality
agreement. When Leniek terminated his relationship with Castle,
Castle did not assert claims of misappropriation of confidential
information nor try to retrieve the information on his computer
nor otherwise sever his access to the thousands of emails on it.
Castle is now arguing that every email sent or received by Leniek
is Castle's confidential information.

ever sent, received, reviewed or retained was confidential is meritless.

Defendants point out that Byrne has worked in the area of high-pressure pumping and flow equipment for the pumping industry for thirty-five plus years and has learned the various specification ranges because he both purchased and sold bar and tubing required for the manufacturing process. Given these years of experience, Castle cannot show the secrecy of the information that it claims is confidential information. No evidence exists to establish to what extent Castle's purported confidential information is known outside of the business, the extent to which it is known by other employees and people involved in the business, including former employees of Castle now working for competitors, the steps taken by Castle to protect the secrecy of the information, the value of the information to Castle and its competitors, and the ease or difficulty involved in others' properly acquiring or duplicating the information. Castle has refused to address these issues in response to Defendants' discovery requests, but instead asserted objections that the requests are overly broad and burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and lack relevance. #60, Ex. C.

### Castle's Response and Surreply (#64, 73)
### and Defendants' Reply (#72)

Because the Court has previously addressed and ruled on Castle's objections to Magistrate Judge Stacy's orders as well as other motions that Castle asserts in its response should preclude

the Court's review of the motion for summary judgment, the Court does not repeat those decisions and moves on to the summary judgment issues.

The Court notes that Castle improperly cites to its own statement of facts contained within its response, despite the established law that pleadings are not summary judgment evidence. The Court looks to actual evidentiary support submitted by the parties to determine whether allegations are probative at this stage of the litigation.

Insisting that Byrne stole confidential information protected by Texas law from Castle, Castle claims that Byrne at all times during his employment with Castle was subject to the Confidentiality Agreement he signed with Tube Supply, Inc. and to Castle's "Trade Secrets and Confidential Information" policy included in its Employee Handbook (#64, Ex. 1), which states in relevant part,

> Because of the risk of harm to the Company and its employees, no employee shall, without the written consent of the Company, during the term of employment or thereafter, use, directly or indirectly, for the benefit of such employee or others, or disclose to others, any trade secrets or confidential information obtained during the course of employment. Each employee shall promptly report to the appropriate supervisor any attempt by outsiders to obtain trade secrets or confidential information or any unauthorized use or disclosure of trade secrets or confidential information by other employees.

Castle alleges that before Byrne resigned and commencing at least by February 2013, Byrne put together a list of customer contacts and their electronic email addresses and sent it to his personal

email account, and then on to an OSS email address.  Castle
attaches a redacted copy of these emails, showing the dates when
he sent them and the accounts to which he sent them, along with a
letter from his attorney describing them and admitting that Byrne
in addition had taken information about Castle's customer purchase
histories and sales generated by Byrne and other employees from
Castle's records.  #64, Group Ex. 2.  These electronic
communications also contained the following notice:

> This E-mail may contain proprietary
> information and may be confidential.  You are
> to treat this material in accordance with
> your company's confidentiality policies and
> limit any distribution accordingly.  If you
> are not the intended recipient of this E-
> mail, you are hereby notified that any
> dissemination, distribution or copying of
> this message is strictly prohibited.  If you
> received this message in error, please delete
> immediately.

*Id.*  Castle asserts that it "has no reason to believe that anyone,
other than Defendant Byrne and the Castle employee who later
located the e-mails sent by Defendant Byrne containing the
customer lists that Defendant Byrne compiled, had access to the
customer lists Defendant Byrne himself prepared and stole from
Castle.  See Ex. 3, Castle's Response to Defendants' Interrogatory
#3 ("With respect to the 'proprietary and confidential business
information' referenced in the Introduction of your Complaint,
please identify each employee that is provided with access to such
'proprietary and confidential business information'").  Castle
first objects to Interrogatory 3 as "not reasonably calculated to
lead to the discovery of admissible evidence" and irrelevant, then
supplements it with the following:

> Subject to and without waiving the foregoing general and specific objections, Castle states that with respect to the tens of thousands of pages of confidential and proprietary information that has been produced by Defendants to date in this case, Castle reasonably believes that the individuals who are referenced as recipients of the documents themselves had access to those records. Castle has been unable to confirm the full extent to which these records have been share to other third parties after these documents had been wrongfully taken or retained by Castle's ex-employees in violation of the policies and agreements previously referenced . . . .

*Id.*

The Court notes that Castle's conclusory statements that it "reasonably believes" something are not competent summary judgment evidence and will not satisfy its evidentiary burden. Castle should have, but did not, submit admissible evidence of the grounds on which its belief is based, so the Court can evaluate whether it supports such a conclusion or raises a genuine issue of material fact for trial.

Castle claims that on March 7, 2013 Byrne helped OSS employees Nick Jones, Humberto Leniek, and Chad Williams to prepare a purchase order to Castle's supplier, Tenaris, for materials. #64. Group Ex. 4. On or about May 19, 2013, Byrne announced to customers he had serviced while at Castle that OSS would have enough inventories to meet their needs within a few weeks. #64, Ex. 5.

In response, Defendants point out that the only "evidence" provided by Castle consists of five heavily redacted emails and "a presumably auto-generated footer stating that emails

-16-

"**may**" contain proprietary information and **may** be confidential.'"
This boilerplate language appears on only the final page of five
emails comprising Exhibit 2.  Defendants contend that these
documents  are  insufficient to establish the existence of
confidential information, an essential element of each of Castle's
causes  of  action.  Defendants also charge Castle with
"intellectually dishonest arguments" in (1) implying that the
Confidentiality Agreement and excerpts from the Employee Handbook
that refer to confidential information thereby establish the
existence of confidential information and (2) in incorrectly
arguing that because Castle asserts, without support, that Byrne
stole its confidential information, Defendants bear the burden to
prove that confidential information does not exist.  Under black
letter Texas law, the party asserting that information is
confidential has the burden to establish its confidential nature.
*Triple Tee Golf*, 485 F.3d at 267 ("[Plaintiff] seems to confuse
what *constitutes* a trade secret with the evidence necessary to
*prove* that trade secret. . . . For [Plaintiff] to succeed on any
of these claims, then, it must first prove that it in fact
possessed (1) proprietary information, that was (2) valuable to
its business" [emphasis in original]); *In re Bass*, 113 S.W. 3d at
739-40(discussing criteria by which claimant must meet its burden
to establish trade secret protection); *Chapa v. Garcia*, 848 S.W.
2d 667, 670 (Tex. 1992)(holding that the "burden of establishing
the true existence of a trade secret and its value to the owner
remains on the claimant," who must submit evidence relating to the
six factors that Texas law considers for trade secret status);

-17-

*Lasser v. Amistco Separation Products, Inc.*, No. 01-13-00690-CV, 2014 WL 527539, at *5 (Tex. App.--Houston [1 st Dist.] Feb. 6, 2014)(party claiming confidential information must "identify, define, explain, or otherwise describe the information it contends constitutes . . . 'confidential information' and trade secrets"); *Birnbaum v. Alliance of Am. Insurers*, 994 S.W. 2d 766, 783 (Tex. App.-Austin 1999, pet. denied)("The party claiming the trade secret has the burden of establishing its existence and its value to the owner.").

From the section on "Substantive law" in this Opinion and Order, it is apparent that the Court fully agrees with Defendants.

Finally Castle argues that because Byrne obtained the information for the customer list from Castle while employed there, the list is protectable as a trade secret.  He cites *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. supp. 2d 598, 667 (S.D. Tex. 2011)("Even if the information was readily available in the industry, it will be protected if the competitor obtained it working for the former employer" and rejecting defendant's summary judgment argument that the company's customer list was not a trade secret based solely on evidence that the information on the list had been assembled from the company's records); *T-N-T Motorsports, Inc. v. Terpstra*, 965 S.W. 2d 18, 22 (Tex. App.--Houston [1 st Dist.] 1998)("The mere fact that knowledge of a product may be acquired through inspection, experimentation, and analysis does not preclude protection from those who would secure that knowledge by unfair means.").  Castle asserts that Byrne has admitted that

he obtained the customer purchase histories and contact information from Castle's records. #64-2, Ex. 2, letter from Byrne's counsel. The list that Byrne assembled and misappropriated was marked as confidential by Castle. That fact and the fact that Castle had a Confidentiality Agreement with Byrne in place and a confidentiality policy in its Employee Handbook show that Castle took measures to protect the secrecy of the information at issue and thus the list is protectable under Texas law.

Here the Court must agree with Castle that some Texas courts have held that even if customer information is readily available in the industry, liability will be upheld if the defendant gained the information in usable form while working for the former defendant. *See M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W. 2d 624 (Tex. App.--Houston [14th Dist.] 1992, writ denied), citing *American Precision Vibrator Co. v. Nat'l Air Vibrator Co.*, 764 S.W. 3d 274, 277 (Tex. App.--Houston [1st Dist.], 19898, no writ), *withdrawn and stayed on other grounds*, 771 S.W. 2d 562 (Tex. App.--Houston [1st Dist.] 1989, no writ), and *Crouch v. Swing Machinery Co.*, 468 S.W. 2d 604, 607 (Tex. App.-1971)("An ex-employee will not be permitted to make use of a secret list of customers, nor of any other confidential information obtained about the customers by virtue of his former employment. This rule has been applied in a multitude of cases."); *see also Jeter v. Associated Rack Corp.*, 607 S.W. 2d 272, 275 (Tex. Civ. App.-- Texarkana 1980, writ ref'd n.r.e.)(noting that in K&G Oil Tool & Serv. Co. v. G&G Fishing Tool Service, 158 Tex. 594, 314 S.W. 2d

781 (1958), *cert. denied*, 3358 U.S. 898 (1958), the Texas Supreme Court opined that it is unquestionably lawful to gain possession, through proper means, of a competitor's product and, through inspection and analysis, create a duplicate, unless the item is patented," the Texarkana court concluded that the mere fact that such lawful acquisition is available does not mean that he may, through a breach of confidence, gain the information in usable form and escape the efforts of inspection and analysis."). This Court has found that a number of courts in Texas have continued to recognize the viability of *Bummerhop* rule. *See, e.g., Tendeka*, 2015 WL 2212601, at *14; *Alliantgroup, LP*, 803 F. Supp. at 626 ("Even if information is readily available in the industry, it will be protected if the competitor obtained it working for the former employer."); *Rimkus*, 688 F. Supp. at 667-68; *The Variable Annuity Life Ins. Co. v. Miller*, No. 07-01-0117, 2001 WL 1598331, at *3 (Tex. App.--Amarillo 2001).

Accordingly, because Castle has raised a genuine issue and shown that Defendants may not be entitled to summary judgment as a matter of law, the Court

ORDERS that Defendants' motion for summary judgment is DENIED.

**SIGNED** at Houston, Texas, this  12<u>th</u>  day of  <u>August</u> , 2015.

<u>MELINDA HARMON</u>
MELINDA HARMON
UNITED STATES DISTRICT JUDGE